NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ELIZABETH B., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil Action No. 20-12286 (RK) <br><br> **MEMORANDUM OPINION** |

**KIRSCH, District Judge**

    **THIS MATTER** comes before the Court on Elizabeth B.'s ("Elizabeth")[1] appeal from the Commissioner of the Social Security Administration's (the "Commissioner") final decision denying Elizabeth's request for child disability benefits. (ECF No. 1.) The Court has jurisdiction to review this appeal under 42 U.S.C. § 405(g) and reaches its decision without oral argument pursuant to Local Civil Rule 78.1. For the reasons below, the Court **VACATES** and **REMANDS** the Commissioner's decision.

**I.    BACKGROUND**

    In this appeal, the Court must determine whether Administrative Law Judge Donna Krappa (the "ALJ") erred by failing to fully develop the record to assess whether acceptable medical evidence existed in the record to support a finding of a medically determinable impairment.

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

A.   **PROCEDURAL POSTURE**

On May 8, 2017, Elizabeth, now 86 years old, filed an application for child's disability insurance benefits. (Administrative Record ("AR") at 9.)[2] Thus, Elizabeth seeks a determination that she is eligible to receive disability insurance benefits retroactive to November 1, 1959 (the "onset date"), almost 65 years ago. The Social Security Administration (the "Administration") denied Elizabeth's request both initially (*id.* at Ex. 1B), and on reconsideration (*id.* at Ex. 3B). Thereafter, Elizabeth requested a hearing, (*id.* at Ex. 4B), and Judge Krappa held a video hearing on April 15, 2019, at which she testified, (*id.* at 47–90). Elizabeth was represented by a friend and power of attorney, but not legal counsel, (the "Representative").(*Id.*).

On June 12, 2019, Judge Krappa issued a written decision finding Elizabeth was not disabled. (*Id.* at 6–17.) On July 29, 2019, Elizabeth submitted new evidence and requested that the ALJ reopen her case on account of same. (*Id.* at 22–23). After reviewing the new evidence, Judge Krappa denied the request to reopen the case on August 1, 2019. (*Id.* at 24.) Elizabeth appealed these decisions, and the Administration's Appeals Council affirmed Judge Krappa's decisions. (*Id.* at 1–3.) This appeal followed, in which Elizabeth is now represented by counsel. (ECF No. 1.) The Record was filed on March 18, 2021, (ECF No. 8), Elizabeth filed her moving brief on June 14, 2022, (ECF No. 14), the Commissioner filed an opposition brief on July 27, 2022 (ECF No. 17), and Elizabeth filed a reply brief on August 9, 2022, (ECF No. 18). This matter was transferred to the undersigned on May 15, 2023. (ECF No. 21.)

---

[2] The Administrative Record ("Record" or "AR") is available at ECF No. 8. This Memorandum Opinion will reference only page numbers in the Record without the corresponding ECF numbers.

2

B.   JUDGE KRAPPA'S DECISION

In her June 12, 2019 opinion, Judge Krappa held that Elizabeth was not disabled under the prevailing Administration regulations. (*See generally* AR at 11–13.) To reach this decision, Judge Krappa looked to the five-step process for determining whether an individual is disabled as set forth in 20 C.F.R. § 404.1520(a). (*Id.* at 31–32.) At Step One, Judge Krappa found that Elizabeth had not engaged in substantial gainful activity since the onset date,[3] which is four days before Elizabeth turned 22. (*Id.* at 11.) At Step Two, Judge Krappa concluded that Elizabeth was not disabled because she did not establish the existence of a medically determinable impairment at any time prior to the onset date. (*Id.* at 12–13 (citing 20 C.F.R. § 404.1520(c)).)

As stated, Elizabeth seeks retroactive disability security benefits going back well more than sixty years. Due to this extraordinary passage of time, Elizabeth understandably faced the onerous, if not impossible, task of finding objective medical evidence to demonstrate a medically determinable impairment. Accordingly, the ALJ faced an equally difficult task of reviewing a record with scant, if any, relevant evidence.

Judge Krappa found no medical signs or laboratory findings in the record to substantiate the existence of a medically determinable impairment. Further, Judge Krappa observed and interacted with Elizabeth at her hearing, describing her as "lovely," and noting that Elizabeth "did not appear to have any cognitive deficits, even at this advanced age. (AR at 12.) She understood all the questions" asked of her, responding appropriately and articulately. *Id.* Elizabeth reported that she did not like school and when she was able to legally, she dropped out. Afterwards, she helped her parents by working on their farm, which grew strawberries and raspberries. *Id.* She also did household chores, listing cleaning, cooking, and laundry as examples. *Id.* She advised Judge

---

[3] As required by 202(d) of the Social Security Act ("SSA"), to be entitled to child's insurance benefits, the claimant must have a disability that began before the claimant turned 22 years old.

Krappa that she can read and write, adding that she enjoys reading, and engaged in drawing and needlework as hobbies. *Id.* Accordingly, Judge Krappa's analysis stopped at Step Two and did not proceed through the rest of the analysis. (*Id.* at 13 (citing 20 C.F.R. §§ 404.350(a)(5), 404.1520(c)).)

This appeal concerns Judge Krappa's Step Two determination. Elizabeth contends that the ALJ's erred by, *inter alia*, improperly failing to address relevant evidence in the form of a reference by Dr. Somogyi without explanation and failing to develop the record.

Elizabeth alleged she was disabled on account of her epilepsy and mental impairment that began on the onset date. At Step Two, Judge Krappa did not find any objective medical evidence in the record to establish a medically-determinable impairment. (*Id.* at 12). She noted that subjective complaints and symptoms alone could not establish this impairment. (*Id.*) The existence of objective medical abnormalities, "i.e., medical signs and laboratory findings," is necessary to establish a medically determinable impairment at Step Two. (*Id.* at 12 (citing 20 C.F.R. §§ 404.1521, 404.1529 and SSR 16-3p).) Judge Krappa recognized Elizabeth's efforts to obtain objective medical evidence from the time of her onset date. However, due to the passage of time, Judge Krappa noted that no objective medical evidence from 1959 exists to establish Elizabeth's mental health impairment.[4] (*Id.* 12). Accordingly, after reviewing the record, subjective complaints, and medical opinion testimony, Judge Krappa concluded there was simply "no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment . . . during the relevant time period, prior to the claimant attaining age 22." (*Id.*) Without a finding of a medically determinable impairment Elizabeth "must be found not disabled at Step [Two] of the sequential evaluation process." (*Id.*)

---

[4] Elizabeth noted that she "never applied for benefits until recently because [her] family had taken care of [her]." (AR at 114.) Following the death of both parents, Elizabeth filed for child disability benefits. (*Id.* at 59.)

4

## II.  LEGAL STANDARD

### A.  STANDARD OF REVIEW

The Court reviews the "final decision of the Commissioner of Social Security" to determine whether the Commissioner's findings are "supported by substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Put differently, "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). This evidentiary threshold "is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In the event that the Appeals Council denies a claimant's request for review, "the ALJ's decision is the Commissioner's final decision." *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001) (citation omitted). The Court may affirm, modify, or reverse the Commissioner's decision. 42 U.S.C. § 405(g).

The scope of the Court's review of the ALJ's decision is "quite limited." *Id.* On review the Court may not "re-weigh the evidence or impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)). Because the ALJ "cannot reject evidence for no reason or for the wrong reason," the ALJ's decision must explain why "probative evidence has been rejected . . . so that a reviewing court

can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706–07 (3d Cir. 1981) (citation omitted).

### B. ESTABLISHING ELIGIBILITY FOR DISABILITY INSURANCE BENEFITS

A claimant may establish disability under the Social Security Act by proving they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). The ALJ applies a well-established "five-step sequential evaluation process," which requires considering whether the claimant:

> (1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is "severe"; (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or her past relevant work; and (5) is able to perform work existing in significant numbers in the national economy."

*McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f)). In order to determine the claimant's ability at Step Four, the ALJ must determine the claimant's RFC, which is "what a [claimant] can still do despite his limitations." *Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002) (citing 20 C.F.R. § 416.945(a)). The claimant bears the burden at the first four steps, at which point it shifts to the Commissioner at Step Five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019).

## III. DISCUSSION

The Court carefully reviewed Elizabeth's submissions which contest the ALJ's Step Two determination for two reasons: (A) Judge Krappa failed to fully develop the record; and (B) Judge Krappa improperly excluded evidence without explanation. The Court addresses each in turn.[5]

### A.   ALJ'S DEVELOPMENT OF THE RECORD

Elizabeth claims the ALJ failed to properly develop the record on account of her *pro se* status. She specifically argues that remand is required because Judge Krappa failed to obtain Elizabeth's records from her prior claims with the Administration in 1990. (ECF No. 14 at 6.) Defendant avers that Elizabeth did not identify any prejudice caused by these alleged failures, and that the ALJ made Elizabeth aware of her right to representation on multiple occasions. (ECF No. 17 at 9–14.) The Court agrees. Elizabeth failed to show how the ALJ's failure to develop the record or her *pro se* status resulted in prejudice.

An ALJ hearing for disability insurance benefits is not an adversarial proceeding. *See Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979). Especially when a claimant is *pro se*, the ALJ must "take a more active role in obtaining the information necessary for a determination on the question of disability." *Gachette v. Weinberger*, 551 F.2d 39, 41 (3d Cir. 1977). However, it is ultimately the *pro se* plaintiff's burden to produce evidence of disability. 20 C.F.R. § 404.1512.

---

[5] Elizabeth lobs several other vague criticisms at the ALJ for failing to comply with SSA internal procedures at the hearing. (*See* ECF No. 14 at 7-8.) The Court finds that none of these allegations resulted in prejudice against Elizabeth.

Elizabeth claims the ALJ did not ascertain whether her representative at the April 15, 2019 hearing met the necessary qualifications, did not fully explain the purpose and conduct of the hearing, did not ask if there were any objection to proposed exhibits, did not swear in the witnesses, and failed to develop the record fully and fairly. (ECF No. 14 at 5–8). However, stating ways in which the ALJ failed to act is not sufficient to show prejudice. *See Herring v. Colvin*, 181 F. Supp.3d 258, 269 (M.D. Pa. 2014) (holding that "pointing out what the ALJ did not do does not address prejudice"). Accordingly, the Court finds Elizabeth's assertions on the ALJ's inaction, without a showing of prejudice, insufficient to justify remand.

In order to justify a remand, the *pro se* claimant must show that their lack of representation or the ALJ's failure to develop the record resulted in clear prejudice or unfairness. *Dobrowlosky*, 606 F.2d at 407.

Elizabeth argues that the ALJ committed a prejudicial error by failing to obtain the records from her prior disability insurance claim in 1990. (ECF No. 14 at 6.) At the hearing, Elizabeth's Representative raised this issue with Judge Krappa, noting his belief that the 1990 claim "proved that she had challenges." (AR at 62.) Judge Krappa said she would "see if there might be a paper case or something else that's out there" because the Representative believed the "prior case must have information in it." (*Id.* at 65.)

In her decision, the ALJ made no reference to this evidence or whether she successfully obtained the details of the Administration's claim in 1990. The ALJ needs to "scrupulously and conscientiously probe into, inquire of, and explore all relevant facts," especially when the claimant is *pro se*. *Herring v. Colvin,* 181 F.Supp.3d 258, 268 (M.D. Pa. 2014) (quoting *Jozefick v. Shalala*, 854 F.Supp. 342, 344 (M.D.Pa.1994) (Vanaskie, J.) (quoting *Smith v. Sec'y of Health, Educ. and Welfare*, 587 F.2d 857, 860 (7th Cir.1978))). However, the ALJ is not required to search out "all the relevant evidence which might be available." *Hess v. Sec'y of Health, Ed. And Welfare*, 497 F.2d 837, 840 (3d Cir. 1974); *see also Herring,* 181 F.Supp.3d at 269 (holding that the ALJ's failure to develop the record is only an error when the claimant can demonstrate that decision was prejudicial by pointing to "additional evidence the ALJ should have considered" or where the claimant could have made "a new argument based on existing evidence."). In the case at bar, the record included reference to Elizabeth obtaining disability insurance in 1990. (AR at 194 (stating that "[Elizabeth] was allowed T16 benefits in 1990").) Elizabeth, however, fails to show how obtaining the records from her prior disability claim would offer any new evidence to bolster her

8

claim of disability onset in 1959. In addition, Elizabeth does not explain how a showing of disability in 1990 evidences her disability in 1959. For example, Elizabeth does not argue that the 1990 claim includes objective medical evidence that establishes a disability that can be traced to an onset in 1959. As a result, the ALJ's failure to obtain Elizabeth's 1990 disability claims record was not prejudicial.

Next, Elizabeth claims that the ALJ failed to apprise her of her right to representation at the April 15, 2019 hearing.[6] Elizabeth argues that the ALJ's written notices informing her of her right to counsel were "merely boilerplate language and do[] not fulfill Social Security's obligation" that a claimant is put on notice of their right to representation. (ECF No. 18 at 1.) However, in prior cases, "when [a] claimant has been informed of his right to counsel before an administrative hearing and knowingly waives it, [her] lack of representation is not, of itself, cause for remand." *Dobrowolsky*, 606 F.2d at 407 (citing *Hess*, 497 F.2d at 840). Further, Judge Krappa notified Elizabeth several times of her right to counsel with written notices prior to her hearing. (ECF No. 17 at 11-12) (written notices included letters entitled "Your Right to Representation" which included information relating to Elizabeth's right to counsel at her hearing, the role of attorneys and non-legal representatives, how to find an attorney, and how attorneys are compensated).) In addition, Judge Krappa asked Elizabeth if she was aware of her right to legal representation at her hearing. (AR at 51.) In response, Elizabeth's Representative explained his difficulty with finding a pro bono attorney and proceeded with signing a waiver of representation on her behalf. (*Id.* at 153.) As a result, Elizabeth failed to show how her *pro se* status was prejudicial during her

---

[6] Elizabeth cites *Dobrowolsky v. Califano,* 606 F.2d at 407, to argue that her lack of representation prejudiced her at the ALJ hearing. (ECF No. 14 at 5.) In *Dobrowolsky*, the claimant stated he had chest pains, which, if supported by objective medical evidence, would go to establishing a listed impairment. The *Dobrowolsky* court held that the "ALJ should have pursued this possibility by calling for additional evidence, and if counsel had represented Dobrowolsky this possibility undoubtedly would have been pursued." *Dobrowolsky*, 6-6 F.2d at 408. In contrast to the case at bar, Elizabeth fails to show how her lack of representation resulted in the ALJ not pursuing evidence of her impairment in 1959. The issue for Elizabeth was the lack of availability of evidence to show the existence of her impairment.

disability hearing when the record demonstrates Elizabeth knew of her right to counsel but waived this right. *See Livingston v. Califano,* 614 F.2d 342, 345 (3d Cir. 1980) ("the fact that a claimant is unrepresented by counsel and has knowingly waived this right is not alone sufficient for remand." (citing *Hess v. Secretary of HEW*, 497 F.2d 837, 840 n.4 (3d Cir. 1974))). (See also Nelson v. Astrue (ED PA Aug 29, 2008) ("a social security claimant who was represented by counsel of [her] own choosing cannot at a later time complain that the representation was inadequate.")

### B.   ALJ'S CONSIDERATION OF THE EVIDENCE[7]

The Court next turns to the ALJ's consideration of the record evidence. Defendant, in its brief, contends that this evidence was properly ignored because it was not relevant. (*See* ECF No. 17 at 16 (stating Dr. Somogyi's treatment notes were not considered because they "did not indicate how he learned this information, and provided no information that explains the extent to which Plaintiff was limited as of November 1959.").) Notwithstanding the ALJ's argument, the Court holds that the ALJ failed to explain its assessment of a relevant reference made in medical treatment notes in the record. Specifically, the relevant evidence relates to a single reference made by Dr. Somogyi contained in his treatment notes in 2018, that Elizabeth was "severe mentally

---

[7] Elizabeth mentions Dr. Williamson's testimony in her brief. However, Elizabeth introduced this evidence to the ALJ after her hearing date. (AR at 23.) To obtain relief in federal court based on evidence that was not presented to the ALJ, a claimant must show 'good cause why that evidence was not procured or presented before the ALJ's decision." *Chandler v. Comm'r of Soc. Sec,* 667 F.3d 356, 360 (3d Cir. 2011). Elizabeth failed to present any showing of good cause for why Dr. Williamson's testimony was not introduced before the ALJ hearing, simply stating that she did not have the evidence "at the date and time or the original hearing." (AR at 23.) As a result, the ALJ properly excluded this evidence from their review because Elizabeth failed to explain why such evidence was not procured before the ALJ hearing. *See Chandler,* 667 F.3d at 360 (holding good cause not shown when claimant did not explain "why she did not attempt to obtain [the] evaluation[s] at a time when [they] could be considered by the ALJ.").

challenged since 1958." (AR at 274). Judge Krappa made no reference as to why she found such evidence unpersuasive. For this reason alone, this Court is constrained to vacate and remand.

At Step Two, the ALJ has to "consider the medical severity of a claimant's impairments(s)." 20 C.F.R. § 404.1520(a)(4)(ii). The severity test at step two "is a de minimis screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.,* 347 F.3d, 541, 546 (3d Cir. 2000). Thus, "the burden placed on an applicant at step two is not an exacting one." *Id.* While "the regulatory language speaks in terms of 'severity,' the Commissioner has clarified that an applicant need only demonstrate something beyond 'a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.'" *McCrea*, 370 F.3d at 360 (citing SSR 85-28 1985 WL 56856 (Jan. 1, 1985)). "Any doubt as to whether this showing has been made is to be resolved in favor of the applicant." *Id.* As a result, "step two is to be rarely utilized as a basis for the denial of benefits…[and] its invocation is certain to raise a judicial eyebrow." *Id.* at 360-61.

Dr. Somogyi started treating Elizabeth in 1990. (AR at 263 (citing Ex. 3F/4).)[8] In his treatment notes from March 23, 2018, Dr. Somogyi states that Elizabeth was "severely mentally challenged since 1958, having seizures since 1974." (*Id.* at 271.) It appears that Judge Krappa, in fact, was aware of and reviewed Dr. Somogyi's treatment notes. (*Id.* at 12.) Judge Krappa referenced his treatment notes in a citation in her ALJ decision, preceded by the statement that such treatment notes contained "no evidence to establish the existence of a medically determinable impairment during the relevant time period." *Id.* However, Judge Krappa did not explain why she finds this evidence insufficient or not credible in establishing a medically determinable impairment. *Id.* We do not make any finding that these treatment notes are credible, sufficient, or

---

[8] In a subsequent exhibit, Dr. Somogyi noted that he began treating Elizabeth in 1987. (AR at 268-271 (citing Ex. 5F).)

based on objective medical evidence. Because we find Dr. Somogyi's reference in his treatment notes relating to Elizabeth prior to the onset date relevant, it merits explanation for its rejection. The ALJ makes no mention of recognizing Elizabeth's mental disability at the time of the hearing, or of any attempt to review her medical record retrospectively to discern if her existing mental impairment could have originated prior to the onset date. *See Mendes v. Barnhart,* 105 Fed. Appx. 347, 352 (3d Cir. 2004) (stating that claimant could establish an impairment after the onset date with objective medical evidence, and given the nature of the disorder, "retrospective diagnosis of an impairment, even if uncorroborated by contemporaneous medical records, but corroborated by lay evidence relating back to the claimed period of disability, can support a finding of past impairment." (citing *Newell,* 347 F.3d at 547 (3d Cir. 2000))).

By failing to explain why such evidence was found unpersuasive, the ALJ exacts a burden of proof at Step Two that "went beyond the *de minimis* screening threshold." *Sherrard v. Saul*, No. 3:18-CV-01590, 2019 WL 4254134, at *7 (M.D. Pa. Aug. 12, 2019) ("in finding that [claimant] did not suffer from a severe impairment… the ALJ cited a lack of contemporaneous medical records supporting [the treating physician's] conclusions. This, however, effectively imposed an exacting burden of proof at step two" that was improper.)

Without any discussion for why this evidence was ignored, the Court is unable to adequately review the ALJ's decision. *See Walton v. Halter,* 243 F. 3d 703, 710 (3d Cir. 2001) ("we are unable to conduct our substantial review if the ALJ fails to identify the evidence he or she rejects and the reason for its rejection."); *see also Burnett v. Comm'r of Soc. Sec. Admin.,* 220 F. 3d 112, 119-20 (3d Cir. 2000). The ALJ cannot reject evidence "for no reason or the wrong reason." *Plummer,* 186 F. 3d at 429. Further, the ALJ is required to "provide an explanation as to why opinion evidence by acceptable medical sources has been rejected so that a reviewing court

can determine whether the reasons for rejection were proper." *Cotter v. Harris,* 642 F. 2d 700, 706 (3d Cir. 1981). Although a Court may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned," a Court's review must be based on the administrative record in existence before the agency, not "some new record made initially in the reviewing court" with post-hoc rationalizations in the ALJ's briefing. *Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.,* 730 F.3d 291, 305 (3d Cir. 2013).

IV. **CONCLUSION**

Having reviewed the record as a whole, the affirmance of Judge Krappa's decision by the Administration's Appeals Council denying Plaintiff benefits is **REMANDED**.[9] The Court issues an order consistent with this Memorandum Opinion.

```
_____
ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE
```

Dated: March 18th, 2024

---

[9] A district court, after reviewing the decision of the Commissioner may under 42 U.S.C. § 405(g) affirm, modify, or reverse the Commissioner's decision with or without a remand to the Commissioner for a rehearing. *Podedworny v. Harris,* 745 F.2d 210, 221 (3d Cir.1984). The decision to direct the Commissioner to award benefits should be made only when the administrative record of the case has been developed fully and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits. *Id.* at 221–22. Elizabeth argues that reversal for payment of benefits is required in this case. However, as Elizabeth notes, the ALJ failed to fully develop the record by not explaining their decision, making remand, not reversal, appropriate. (EFC No. 14 at 8). We therefore remand this case to the Commissioner for further administrative proceedings consistent with this opinion.